1   Jeffrey N. Pomerantz (CA Bar No. 143717)
    Linda F. Cantor (CA Bar No. 153762)
2   Robert M. Saunders (CA Bar No. 226172)
    PACHULSKI STANG ZIEHL & JONES LLP
3   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California  90067-4100
4   Telephone: 310/277-6910
    Facsimile:  310/201-0760
5
    [Proposed] Attorneys for the Debtors and Debtors in Possession
6

7

8                   **UNITED STATES BANKRUPTCY COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

                    **SAN FERNANDO VALLEY DIVISION**
10

| In re: | Case No. 1:10-bk-15358 GM |
|---|---|
| | Chapter 11 |
| OCEAN PARK HOTELS-TOY, LLC, a California limited liability company | |
| Debtor, | |

| In re | Case No. 1:10-bk-15359 GM |
|---|---|
| | Chapter 11 |
| OCEAN PARK HOTELS-TOP, LLC, a California limited liability company | |
| Debtor. | |

**EMERGENCY MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING, BUT NOT REQUIRING, DEBTORS TO PAY PREPETITION (A) WAGES, SALARIES, AND OTHER COMPENSATION, (B) EMPLOYEE MEDICAL, WORKERS' COMPENSATION AND SIMILAR BENEFITS, AND (C) REIMBURSABLE EMPLOYEE EXPENSES; AND (II) AUTHORIZING DEBTORS TO REISSUE CHECKS OR ELECTRONIC TRANSFER REQUESTS RELATING TO THE FOREGOING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Declaration James M. Flagg In Support of Emergency Motions Filed Concurrently Herewith]

Date:   May 10, 2010
Time:   2:00 p.m.
Place:  Courtroom 303
        United States Bankruptcy Court
        21041 Burbank Boulevard
        Woodland Hills, California 91367
Judge:  Honorable Geraldine Mund

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS OF THE DEBTORS, ALL ALLEGED SECURED CREDITORS; PARTIES REQUESTING SPECIAL NOTICE, AND THE OFFICE OF THE UNITED STATES TRUSTEE**:

Ocean Park Hotels-TOY, LLC ("TOY") and Ocean Park Hotels-TOP, LLC ("TOP"), the debtors and debtors in possession in the above-captioned cases (the "Debtors"), hereby move the Court on an emergency basis pursuant to Local Bankruptcy Rule 2081-1(2)(F) for entry of an order substantially in the form attached hereto as **Exhibit A** pursuant to sections 105(a), 363(b), 507(a), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing, but not directing, the Debtors to pay or honor in their discretion certain Employee Obligations and Webster Obligations (defined in the Memorandum of Points and Authorities below) and (ii) authorizing Debtors to reissue checks or electronic transfer requests relating to the foregoing (the "Motion").  The basis for the relief requested in this Motion is set forth below and in the *Declaration of James M. Flagg in Support of Emergency Motions* (the "Flagg Declaration"), which is being filed concurrently with this Motion and is incorporated herein by reference.

The Debtors will experience irreparable harm without the relief requested in this Motion. The Debtors' loyal employees are vital to the orderly administration of the Debtors' estates.  Most employees live paycheck to paycheck and expect to be paid for services performed.  The Debtors believe that without the relief requested their employees will be faced with tremendous hardship. Payment of, and otherwise honoring, the Employee Obligations is necessary to prevent many of the employees from leaving the Debtors during the pendency of their cases and to maintain the employees' morale through the administration of the Debtors' cases.  Moreover, the Debtors' payment of, and otherwise honoring, the prepetition Employee Obligations and Webster Obligations in the ordinary course of business will not prejudice their general unsecured creditors or materially affect the Debtors' estates because these claims to the extent earned prepetition, are entitled to priority under sections 507(a)(4), 507(a)(5), and (a)(8)(D) of the Bankruptcy Code and must be paid ahead of general unsecured claims.  The Debtors' employees are vital to their reorganization efforts and provide essential services without which the Debtors' ability to preserve

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

their assets for the benefit of all creditors will be seriously impaired.  Under these circumstances, and as set forth below, the Debtors respectfully submit that the Court should grant the relief requested in this Motion.

**WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that this Court enter an order (1) authorizing, but not requiring, Debtors to pay prepetition (a) wages, salaries, and other compensation, (b) employee medical, workers' compensation and similar benefits, and (c) reimbursable employee expenses; (2) authorizing Debtors to reissue checks or electronic transfer requests relating to the foregoing, and (3) granting such other and further relief as is just and proper under the circumstances.

Dated:    May 6, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By    */s/ Jeffrey N. Pomerantz*
Jeffrey N. Pomerantz
Linda F. Cantor
Robert M. Saunders
[Proposed] Attorneys for Debtors and
Debtors in Possession

3

# TABLE OF CONTENTS

**Page**

**I. INTRODUCTION** ........................................................................................................... 1

**II. FACTS IN SUPPORT OF MOTION** ........................................................................... 1

**III. STATEMENT OF FACTS** ........................................................................................... 2

   A.  Background ................................................................................................................ 2

   B.  The Debtors' Workforce and Benefits Programs ..................................................... 5

   C.  Prepetition Wages .................................................................................................... 7

   D.  Ordinary Course Performance Bonuses ................................................................... 9

   E.  Deductions/Payroll Taxes ..................................................................................... 10

   F.  Vacation/Sick Leave and Other Leave Policies .................................................... 10

   G.  Employee Benefits ................................................................................................ 11

   H.  Medical and Dental Insurance .............................................................................. 11

       1.   Medical ....................................................................................................... 11

       2.   Dental and Vision Plan .............................................................................. 11

       3.   Life and Disability Insurance Benefits ...................................................... 12

       4.   Workers' Compensation ............................................................................ 12

   I.  Reimbursable Expenses ........................................................................................ 12

   J.  Summary ................................................................................................................ 13

**IV. ARGUMENT** .............................................................................................................. **13**

   A.  Prepetition Wages and Prepetition Employee Benefits Are Priority Claims Under

      Bankruptcy Code Sections 507(a)(4) .................................................................. 14

   B.  Funds Held in Trust Are Not Available for Distribution to Unsecured Creditors ............... 15

   C.  This Court Has Authority Pursuant To Section 105(a) and the "Doctrine of Necessity" To

      Grant The Relief Requested .................................................................................. 17

   D.  Reissuing Checks and Electronic Transfers Relating to Employee Obligations .................. 19

       F.   Compliance with Fed. R. Bank. P. 6003(b) ................................................... 19

**V. CONCLUSION** ............................................................................................................. **19**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## Cases

*Begier v. IRS*
496 U.S. 53 (1990).................................................................................16

*City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*
41 F.3d 92 (3d Cir. 1994).........................................................................16

*Dudley v. Mealev*
147 F.2d 268 (2d Cir. 1945), *cert. denied*, 325 U.S. 873 (1945)........................17

*In re All Seasons Indus., Inc.*
121 B.R. 822 (Bankr. N.D. Ind. 1990)........................................................15

*In re B&W Enterprises*
713 F.2d 534 (9th Cir. 1983).....................................................................18

*In re Canton Castings, Inc.*
103 B.R. 874 (Bankr. N.D. Ohio 1989).......................................................15

*In re Chateaugay Corporation*
116 B.R. 887 (Bankr. S.D.N.Y. 1990)........................................................17

*In re Equalnet Communications Corp.*
258 B.R. 368 (Bankr. S.D. Tex. 2000).......................................................18

*In re Feit & Drexler, Inc.*
760 F.2d 406 (2d Cir. 1985) ....................................................................17

*In re Gulf Air, Inc.*
112 B.R. 152 (Bankr. W.D. La. 1989)........................................................18

*In re Ionosphere Clubs, Inc.*
98 B.R. 174 (Bankr. S.D.N.Y. 1989).........................................................17

*In re Leigh & New England Rwy Co.*
657 F.2d 570 (3rd Cir. 1981) ...................................................................17

*In re Pac. Forest Indus., Inc.*
95 B.R. 740 (Bank. C.D. Cal. 1989)...........................................................15

*Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*
155 F.3d 718 (4th Cir. 1998) ...................................................................16

## Statutes

11 U.S.C. § 105(a) ...........................................................................1, 17

11 U.S.C. § 363(b) ...............................................................................1

11 U.S.C. § 507 ....................................................................................2

11 U.S.C. § 507(a) ...............................................................................1

11 U.S.C. § 507(a)(4)....................................................................9, 14, 15

11 U.S.C. § 507(a)(5)....................................................................9, 14, 15

11 U.S.C. § 507(a)(8)(D) ...................................................................14

11 U.S.C. § 541(d) ........................................................................15, 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11 U.S.C. § 1107(a) ..................................................................................................... 1, 2

11 U.S.C. § 1108 .......................................................................................................... 1, 2

**Other Authorities**

2 *Collier on Bankruptcy*
    §105.2, at 105-4 (15th ed. 1988) ............................................................................ 17

**Rules**

Local Bankruptcy Rule 2081-1(b)(2)(F) .......................................................................... 1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

The Debtors request entry of an order on an emergency basis pursuant to Local Bankruptcy Rule 2081-1(b)(2)(F) and sections 105(a), 363(b), 507(a), 1107(a) and 1108 of the Bankruptcy Code (i) authorizing, but not directing, the Debtors to pay or honor in their discretion certain employee-related obligations and (ii) authorizing the Debtors to reissue checks and electronic transfers relating to the foregoing.

The Debtors' goal in these chapter 11 cases is to facilitate an orderly administration of their bankruptcy cases, and to maximize the value of their assets for the benefit of all stakeholders. Accordingly, it is imperative to the accomplishment of the Debtors' goals in these cases that the Debtors minimize any adverse impact of the chapter 11 filings on the Debtors' workforce and on the orderly administration of these cases. Any disruption to payment of employee payroll in the ordinary course, or the continued implementation of employee programs in the Debtors' discretion, would adversely affect the Debtors' goals in these cases because such events are likely to cause employees to leave the Debtors and hurt employee morale at a particularly sensitive time for all employees. Failure to honor payroll and employee benefits obligations could have severe repercussions on the Debtors' ability to preserve their assets and administer their estates to the detriment of all constituencies. If the Debtors are not permitted to meet all payroll-related obligations in the ordinary course of business, the Debtors could suffer unmanageable employee turnover. Accordingly, the Debtors respectfully request that the Court grant the Motion.

**II.**

**FACTS IN SUPPORT OF MOTION**

Pursuant to Local Bankruptcy Rule 2081-1(b)(2)(F), the following is a summary of the evidence that will be submitted in support of the Motion:

<u>Current Employees</u>: Each Debtor's employees covered by this Motion are still employed by the respective Debtor.[1]

---

[1] See discussion below of the Webster Obligations.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

<u>Necessity for Payment</u>:  The obligations to or on behalf of employees must be paid to avoid interruption to each Debtor's business.  Each Debtor's employees are essential to the effective reorganization of the respective Debtor's business.  Without the relief requested in this Motion, the Debtors face the serious risk of unmanageable employee turnover.

<u>Benefit of Procedures</u>:  Paying and/or honoring the obligations to or on behalf of employees will accrue to the benefit of the Debtors because it will improve employee morale and greatly increase the chances that the Debtors will be able to retain their excellent workforce.  Retaining a motivated, experienced workforce will ultimately benefit the creditors of these estates by enhancing the going concern value of each Debtor's business and accordingly, its possibilities for reorganization.

<u>Prospect of Reorganization</u>:  The Debtors intend to continue operations in the ordinary course and to propose a plan of reorganization in these cases.

<u>No Insiders</u>:  No insiders will receive any direct payments for wages earned prior to the Petition Date pursuant to this Motion.

<u>Employee Obligations to Be Paid Are Entitled to Priority</u>:  As set forth herein, the Debtors seek to honor claims that are within the limits established by 11 U.S.C. § 507.

<u>Payment Will Not Render Estates Administratively Insolvent</u>:  The Debtors have adequate cash on hand to pay the obligations to or on behalf of employees, as well as all administrative expenses as such obligations come due.

Based on the foregoing, the Debtors urge the Court to authorize the payment of obligations to or on behalf of employees in the ordinary course of business.  Timely payment of these obligations will allow the Debtors to continue to operate without interruption, while avoiding any unnecessary hardship to the employees or to the Debtors as a result of employee turnover.

**III.**

**<u>STATEMENT OF FACTS</u>**

**A.    <u>Background</u>**

On May 6, 2010 (the "Petition Date"), the Debtors commenced these cases (the "Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee has been appointed in the Cases.  On the Petition Date, the Debtors filed a motion for joint administration of the Cases under Bankruptcy Rule 1015(b).

The Debtors are Ocean Park Hotels-TOY, LLC ("TOY") and Ocean Park Hotels-TOP, LLC ("TOP").  TOY owns the 120-room focused-service Courtyard by Marriott hotel located at 1710 Newbury Road, Thousand Oaks, California (the "Courtyard Hotel").  TOP owns the 93-room extended-stay Marriott TownePlace Suites hotel located at 1712 Newbury Road, Thousand Oaks, California (the "Suites Hotel," and, collectively, with the Courtyard Hotel, the "Hotels").

The Courtyard Hotel opened in December 2006 and the Suites Hotel opened in April 2007. Since opening, the Hotels have been operated continuously and have received laudable ratings from Marriott International, Inc. ("Marriott"). In September 2009, Marriott conducted a performance and operational review of the Courtyard Hotel; it received a total score of 98 out of a possible 100.  The most recent performance and operational review of the Suites Hotel was conducted on February 4, 2010, resulting in a score of 97 out of 100 – the highest score of any Towne Suite Marriott facility in the United States.

The Hotels have continued to maintain viable occupancy rates during the current economic climate.  The Courtyard Hotel had an average occupancy rate of 73.84% for March 2010 and an average occupancy rate of 67.17% for the first quarter of 2010.  The Suites Hotel had an average occupancy rate of 70.00% for March 2010 and an average occupancy rate of 72.86% for the first quarter of 2010.   The Debtors project that the average annual revenues for years 2009 and 2010 will be approximately $4.2 million for the Courtyard Hotel and approximately $2.65 million for the Suites Hotel.  The current and projected operating revenues are sufficient to allow the Debtors to pay on-going operational expenses.

The Hotels are managed by Ocean Park Hotels, Inc. ("Ocean Park"), which is a developer, owner, and operator of focused-service and extended-stay hotels with corporate office in San Luis Obispo, California.  Ocean Park's managed hotel properties operate under the flags of Marriott, Hilton, Holiday Inn Express, and Best Western franchises, with hotels currently operating in California in Thousand Oaks, Camarillo, Valencia, San Luis Obispo, Goleta (Santa Barbara) and Poway (San Diego).  James Flagg serves as the Ocean Park's president and, during his twenty-year real estate career, he has been involved in over $1 billion of real estate transactions.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

TOY and TOP are each California limited liability companies. CEF Equities, LLC owns a 75% membership interest in each Debtor (CEF Equities, LLC is 100% owned by the Claire E. Flagg Trust). James Flagg owns a 25% membership interest. James Flagg is the Manager of each Debtor under their respective limited liability company operating agreements.

Construction of the Hotels began in or about November 2004 funded by a construction loan (the "Loan") from Nationwide Life Insurance Company ("Nationwide" or "Lender"). Under a construction loan agreement dated as of November 18, 2004 (as amended, the "Loan Agreement"), Nationwide agreed to loan TOY and TOP initially $23,750,000 (increased to $25,319,000 in 2006) for construction of the Hotels, to be secured by construction deeds of trust, UCC filings, and assignments of lease and rents. The Loan is guaranteed by Ocean Park, James Flagg and the Claire E. Flagg Trust. The Loan is serviced for Nationwide by RBC Investment Services LLC ("RBC), whose sole member is RockBridge Capital, LLC.

The Loan matured by its terms on December 1, 2009 (the "Maturity Date"). On December 2, 2009, RBC sent TOY and TOP a notice of default. On March 1, 2010, and again on March 9, 2010, Nationwide sent TOY and TOP demand letters for repayment of the Loan.

On April 6, 2010, Nationwide filed its Complaint for Foreclosure of Trust Deed and Specific Performance in the Superior Court of the State of California in Ventura County. The foreclosure action was assigned case number 56-2010-00370987-CU-OR-VTA (the "Foreclosure Action").

On April 8, 2010, Nationwide filed its Ex Parte Application for Order Appointing Receiver, Temporary Restraining Order and Order to Show Cause Re Appointment of Receiver and Preliminary Injunction; and Points and Authorities in Support Thereof (along with supporting declarations) (the "Ex Parte Application"). On April 9, 2010, TOY and TOP filed their Opposition to the Ex Parte Application on the grounds, inter alia, that the appointment of a receiver (i) is unnecessary and unwarranted under the circumstances, (ii) would impede the Hotels' operations and hurt employee morale, and (iii) impair the value of the Hotels to the detriment of all parties in interest. The Ex Parte Application was heard and all relief sought (temporary restraining order,

1 appointment of receiver and preliminary injunction) was denied by the superior court on an ex

2 parte basis on April 9, 2010.

3      A hearing on whether the relief sought in the Application should be granted after notice and

4 full briefing is scheduled for May 6, 2010. TOP and TOY filed their opposition to the Ex Parte

5 Application on April 23, 2010, and Nationwide filed a reply to the opposition on April 30, 2010.

6 No injunctive relief is currently in place.

7      The Debtors believe that the value of the Hotels substantially exceeds the amount owed to

8 Nationwide on the Loan. Specifically, the Debtors believe that the value of the Hotels is in excess

9 of $30 million. In order to maintain the value of the Hotels for the benefit of all constituents, the

10 Debtors filed their petitions for relief under the Bankruptcy Code. The Debtors are exploring

11 alternatives to maximize the value of the estates, including possibly refinancing the Loan, a sale of

12 one or both of the Hotels or a restructuring of the Loan and their other obligations under a chapter

13 11 plan of reorganization.

14 **B.**    **The Debtors' Workforce and Benefits Programs**

15      As of the Petition Date, the Debtors collectively employed approximately 51 full-time and

16 seven part-time employees (collectively, the "Employees"). TOY employs approximately 34 full-

17 time Employees and two part-time Employees, of which four full-time Employees are salaried and

18 30 full-time (and both part-time) Employees are hourly. TOP employs approximately 22 full-time

19 Employees and five part-time Employees, of which three full-time Employees are salaried and 19

20 full-time (and all part-time) Employees are hourly. All of the Debtor's Employees work at their

21 respective Hotels. None of the Employees are insiders as such term is defined in section 101(31)

22 of the Bankruptcy Code ("Insiders").[2]

23      The Debtors provide a benefits package that demonstrates its full level of commitment to its

24 Employees. The Debtors offer competitive salaries and wages, paid vacations and holidays, paid

25 sick and other leave and medical and life insurance benefits for all Employees (and provides

26

27

28 [2] James M. Flagg, each Debtors' Manager and a member under its limited liability company operating agreement, is not an Employee of either Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Employees with access to dental and vision insurance). The Debtors also provide the statutory workers compensation benefits to all Employees.

The Employees perform a variety of critical functions, including customer service, management, marketing, sales, technical services, housekeeping, food and beverage service and other tasks. The Employees' skills and their knowledge and understanding of the Debtors' operations, customer relations and infrastructure are essential to the effective reorganization of the Debtors' business.

As discussed further below, to minimize the hardship that the Debtors' workforce will suffer if prepetition obligations are not paid when due, and to avoid disruption of the Debtors' workforce as the Debtors pursue an orderly reorganization, the Debtors seek authority to pay certain prepetition claims for, among other items, wages, salaries, and other compensation including federal and state withholding taxes, payroll taxes, contributions to employee benefit plans, and all other employment related benefits, which the Debtors pay or provide in the ordinary course (collectively, the "Employee Obligations"). In addition, the Debtors request authority to pay to the appropriate third parties the amounts that are deducted and withheld from Employees' paychecks (the "Employee Deductions"), which are in most instances not property of the Debtors' estates, and to reimburse Employees for expenses incurred by such employees prepetition in the ordinary course of business (the "Employee Expenses"). Lastly, the Debtors seek to withhold and remit the appropriate Payroll Taxes (as defined below). By this Motion, the Debtors seek authority to pay, honor, or remit, in their sole discretion, Employee Obligations, Employee Deductions, Payroll Taxes, and Employee Expenses with respect to the Debtors' Employees (as of the Petition Date and postpetition). The Debtors also seek this Court's authorization to pay or reimburse Ocean Park for the Webster Obligations. The Debtors additionally seek authority to reissue checks or electronic transfer requests relating to the Employee Obligations.

TOY and TOP each respectively employ all of their Employees. Other than as stated below, each Employee performs services only for his or hers employer's Hotel and is paid only by TOY or TOP and not both. The Debtors' Director of Sales and a Sales Manager perform services

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   for both TOY and TOP.  The Director of Sales is paid by TOP and the Sales Manager is paid by

2   TOY.

3       TOY and TOP, respectively, also employ the services of Mike Webster ("Webster") as

4   General Manager, who is an employee of Ocean Park.  Webster is not an Insider.  He is a Marriott-

5   trained manager.  As such, he has the primary responsibility for the successful operation of both the

6   Suites Hotel and the Courtyard Hotel.  He oversees guest relations, revenue management, sales and

7   marketing, housekeeping and maintenance, food and beverage operations, property-level human

8   resources and risk management. An Assistant General Manager at each hotel (Suites Hotel and

9   Courtyard Hotel) that is in Employee of TOY and TOP respectively assists him.  He spends the

10  vast majority of his time at the Courtyard Hotel as it is the larger of the two hotels (it has meeting

11  space and a food and beverage operation; the Suites Hotel is an extended stay hotel with very

12  limited service and guests there are more independent and its suites are akin to short-term

13  apartments).  In addition, Webster serves as a Regional General Manager for the Camarillo and San

14  Luis Obispo, California hotels managed by Ocean Park (in an oversight capacity, he is available to

15  consult with the General Managers of those hotels, and his time spent on this activity is *de*

16  *minimis*).

17      Ocean Park pays Webster his salary and provides him with benefits (the Debtors believe

18  that Webster's compensation is consistent with industry norms).[3]  Ocean Park is reimbursed by

19  TOY for his salary, bonus, health, dental, vision and life insurance benefits, as well as for workers

20  compensation insurance (the "Webster Obligations").  Ocean Park and TOY reconcile the amounts

21  due to Ocean Park for the Webster Obligations monthly and Ocean Park bills them monthly to

22  TOY.

23  **C.    Prepetition Wages**

24      The average semi-monthly gross payroll for Employees is approximately $30,440.00 for

25  TOY and $18,573.00 for TOP, which figure includes Wages, Employee Deductions and Employer

26  Payroll Taxes.  The Employees are paid their wages and salaries (the "Wages") semi-monthly, in

27  _____

28  [3] The benefits provided by Ocean Park differ from the benefits provided by TOY and TOP to its employees. He is on
    the Blue Shield PPO plan, Wells Fargo/MES vision insurance plan and Principal dental and life insurance plan of
    Ocean Park, for instance.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

arrears, on the fifth day after end of each pay period (or the weekday before if the pay day falls on a holiday or weekend) (each, a "Payroll Date"). The first payroll period in each month runs from the first to the 15th day of the month and the second payroll period of each month runs from the 16th day to the end of the month (each, a "Payroll Period"). All payments are made to Employees through direct deposit or check. The date on which the Employees were last paid was May 4, 2010, which Payroll Date was for the Payroll Period ending April 30, 2010. Each Employee that was not paid by direct deposit was issued a bank draft or cashier's check.

Each Debtor's next Payroll Date subsequent to the Petition Date is scheduled for May 20, 2010 for the Payroll Period beginning prepetition on May 1, 2010 and ending postpetition on May 15, 2010, and will therefore include approximately $13,337.00 for TOY (including Webster Obligations) and $7,118.00 for TOP for the prepetition period of May 1, 2010 to and including May 6, 2010 (the "Prepetition Wages").

Each Debtor's payroll is typically disbursed to Employees by the independent payroll service provider Automatic Data Processing, Inc. ("ADP"). TOY funds its payroll to ADP from its Operating Account at Wells Fargo Bank, N.A. ("Wells Fargo") typically one day in advance of each Payroll Date and ADP pays TOY's Employees; TOY's Employees are paid by ADP using direct deposits or checks drawn directly from TOP's Operating Account. ADP debits each Debtors accounts for its fees. As of the Petition Date, the Debtor did not owe ADP any unpaid fees with respect to ADP's processing of the Debtors' payroll and related administration (the "ADP Administration Fees"). The Debtor requests authority to pay ADP any ADP Administration Fees that ADP may be owed in connection with the foregoing services and to continue to pay ADP postpetition in the ordinary course of the Debtors' business with respect to the same.

In sum, the Debtors seek authority to continue with their payroll schedule in the ordinary course of their business and consequently to pay all Prepetition Wages as planned on the May 20, 2010 Payroll Date, as indicated above. TOY also plans to pay its Webster Obligations and each of the Debtors plan to make payments from time to time to Employees for prepetition amounts owed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    that are not Prepetition Wages.[4]  In all instances, due to the fact that no Employee will be paid

2    more than $10,950 in Prepetition Wages (and contributions to employee benefit plans or ordinary

3    course performance bonuses, as discussed below), the Debtors will not make payroll distributions

4    to any particular Employee (or pay Webster Obligations) in an amount that would exceed the

5    allowable priority portion of such Employee's Prepetition Wages (and contributions to employee

6    benefit plans) under section 507(a)(4) or 507(a)(5) of the Bankruptcy Code.  The Debtors assert

7    that the costs associated with paying priority employee wage claims on the next routine Payroll

8    Date are relatively minimal compared with the damage to the Debtors' estates that would ensue if

9    Employee morale were disrupted by the Debtors' failure to meet their payroll obligations.

10    **D.    Ordinary Course Performance Bonuses**

11            In the ordinary course of their business, the Debtors pay Employees periodic bonuses based

12    on performance metrics (the "Ordinary Course Performance Bonuses"), which may be up to 15%

13    of salary.[5]  Performance metrics for most Employees of the Hotels who receive performance

14    bonuses (mainly department heads, but not Webster, the Debtors' Director of Sales and sales

15    managers) are set by Webster as General Manager quarterly to incentivize such Employees to

16    remedy any perceived operational deficiencies in their area of operations.  Metrics for General

17    Manager are determined on a company-wide basis for all Ocean Park operated hotels; however,

18    performance is measured by the hotels that the General Manager manages (for Webster, TOY and

19    TOP).  Metrics for the Director of Sales and Sales Managers include sales-related activities (such

20    as sales calls) and sales revenue generated for TOY and TOP.  Typically, any Ordinary Course

21    Performance Bonuses accrue to the end of each calendar quarter and are paid within 45 days of the

22    end of the quarter.  The Debtors' first payroll after the Petition Date, to be paid on May 20, 2010,

23    will not include any Ordinary Course Performance Bonuses.

24

25    _____

26    [4] In addition to Prepetition Wages, some Employees may be owed prepetition amounts because (a) discrepancies may exist between the amounts paid and the amounts that should have been paid and (b) some payroll checks issued to

27    Employees prior to the Petition Date may not have been presented for payment or may not have cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date.

28    [5] Webster's bonus, which is paid by Ocean Park, is up to 20% of his salary.  An amount for Webster's bonuses are part of the Webster Obligations that TOY pays to Ocean Park.

**E.    Deductions/Payroll Taxes**

In the ordinary course of their business, the Debtors also deduct from their Employees' paychecks the following Employee Deductions (as applicable): (a) payroll taxes and the Employees' portion of FICA, state disability and unemployment taxes; (b) Employee contributions for health benefits, (c) legally ordered deductions such as wage garnishments, child support and tax levies; and (d) miscellaneous other items.  ADP remits amounts equal to the Employee Deductions to appropriate third-party recipients.  On average, TOY and TOP have deducted approximately $4,379.79 and  $2,622.98 from the Employees' paychecks every payroll, respectively.

The Debtors are required by law to withhold from an Employee's wages amounts related to federal, state and local income taxes, social security and Medicare taxes for remittance to the appropriate federal, state or local taxing authority (collectively, the "Withheld Amounts").  On a semi-monthly basis, the Withheld Amounts for TOY and TOP are approximately $4,379.79 and $2,622.98, respectively.  The Debtors must then match from their own funds for social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (the "Employer Payroll Taxes," and together with the Withheld Amounts, the "Payroll Taxes").  On a semi-monthly basis, the Payroll Taxes, including both the employee and employer portions for TOY and TOP are approximately $7,524.58 and  $4,396.95, respectively.  The Debtors seek authority to continue to honor and process the Payroll Taxes incurred prepetition on a postpetition basis, in the ordinary course of business.

**F.    Vacation/Sick Leave and Other Leave Policies**

All full-time Employees are eligible to accrue vacation leave (the "Vacation Leave") and sick leave (the "Sick Leave").  In the ordinary course of business, the Debtors generally do not allow Employees to "cash out" any accrued Vacation Leave and Sick Leave, except in the case of termination (the Debtors written vacation policies, however, permit each relevant Debtor to cash out Employees who accrue more vacation time than permitted).  Employees are also eligible for bereavement leave and time off for voting and jury duty and other leave per the Debtors' written policies ("Other Leave" ).  The Debtors seek authority to continue to honor their Vacation Leave and Sick Leave and Other Leave (collectively, "Leave") policies in the ordinary course of business.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**G.      Employee Benefits**

The Debtors have established a variety of benefit plans and programs (the "Employee Benefits") designed to assist their Employees and their eligible dependents in meeting certain financial burdens, including those that can arise from illness, disability and death.  All full-time Employees may participate in certain of the Employee Benefits programs.

**H.      Medical and Dental Insurance**

**1.      Medical**

The Debtors offer all full-time Employees basic medical insurance (the "Medical Plan") under a policy provided and operated by Kaiser Permanente.  Approximately eight TOY and five TOP full-time Employees are covered.  All premiums are paid on a cost-sharing basis between the Debtors and the Employees.  Under the Medical Plan, the Debtors pay 75% of the premiums per month and the Employees pay 25% of the monthly premiums.  Contributions for dependents' health insurance are made 100% by the Employee for the first three years of service and at the 75%-25% ratio for Employees with more than three years of service.  Ocean Park advances a monthly premium payment to Kaiser Permanente for the Medical Plan and, thereafter, the Debtors reimburse Ocean Park for their proportionate share of the premium each month (the policy also covers employees of Ocean Park-managed hotels that are owned by nondebtors, which reimburse Ocean Park for their shares of the premium).  The Debtors seek authorization to continue to reimburse Ocean Park for their respective shares of the premium payments advanced by Ocean Park.

The Debtors also follow all federal COBRA laws and applicable state laws regarding health insurance, including continuation of coverage upon termination of employment if the Employee requests it.  The terminated Employee is responsible for payment of the premium with no cost to the Debtors.

**2.      Dental and Vision Plan**

Those Employees who avail themselves of the dental and vision insurance provided by the Debtors (the "Dental/Vision Plan") bear 100% of the responsibility to pay the premiums for both Employee and dependent coverage.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The Debtors believe that the continued provision of coverage under the Medical Plan and

2    the opportunity to purchase Dental/Vision Plan are vital components of their Employee Benefits.

3    Accordingly, the Debtors seek authority to continue providing coverage under such plans in the

4    ordinary course of business.

5    **3.    Life and Disability Insurance Benefits**

6    The Debtors also offer a life insurance benefit (the "Life Insurance Benefit") to their

7    Employees through Mutual of Omaha.  This Life Insurance Benefit is afforded to the Employees as

8    an accommodation as the cost of the policy is fully funded by the Employees with no cost to the

9    Debtors.  Accordingly, the Debtors seek authority to continue providing their Employees with the

10    ability to obtain the Life Insurance Benefit.

11    **4.    Workers' Compensation**

12    The Debtors provide workers' compensation insurance for their Employees at the statutory-

13    required level through CompWest Insurance Company (the "Workers' Compensation Insurance").

14    The Debtors pay monthly premiums for coverage under the Workers' Compensation Insurance.

15    The next monthly premium in the amount of $1,585.00 for TOY and $2,540.00 for TOP was due

16    on May 1, 2010.  The estimated annual cost to the Debtors for the Workers' Compensation

17    Insurance is $28,143.00 for TOY and $17,565.00 for TOP.  TOY and TOP each have their own

18    Workers Compensation Insurance policy.

19    By this Motion, each Debtor requests authority to continue to maintain, to be exercised in

20    its sole discretion, its Workers' Compensation Insurance in the ordinary course of business and to

21    pay any and all prepetition amounts related thereto including, without limitation, any payments for

22    workers' compensation claims, deductibles, premiums and fees owed for administrative costs and

23    other amounts required in connection with the Workers' Compensation Insurance, as such amounts

24    become due in the ordinary course of business.

25    **I.    Reimbursable Expenses**

26    The Debtors customarily reimburse Employees who incur business expenses in the ordinary

27    course of performing their duties on behalf of the Debtors.  Such expenses typically include, but

28    are not limited to, parking and business-related travel expenses, including transportation, auto

1   travel and car rental, lodging, meal charges, business lunches and entertainment expenses,

2   telephone charges, and miscellaneous other allowed travel expenses (the "Reimbursement

3   Obligations"). Expense reports detailing the expenses are submitted for reimbursement by the

4   Employees to the General Manager and must be supported a reimbursement request with copies of

5   receipts attached. The Debtors seek authority, but not direction, to pay all Employee Expenses

6   incurred prior to the Petition Date and to continue to pay the Employee Expenses postpetition in

7   the ordinary course of business.

8   **J.**    **Summary**

9          In summary, the Debtors seek authority, in their sole discretion:

10         (1)    To honor and pay, when due, all unpaid Prepetition Wages, prepetition Ordinary

11                Course Performance Bonuses and Webster Obligations.

12         (2)    To pay the applicable Payroll Taxes in connection with the Prepetition Wages and

13                prepetition Ordinary Course Performance Bonuses;

14         (3)    To permit the Debtors and their Employees to utilize Leave (whether accrued

15                prepetition or postpetition) in the ordinary course of business;

16         (4)    To make all appropriate Deductions and to forward the Deductions to the

17                appropriate agency or plan administrator;

18         (5)    To honor and pay, when due, all Employee Expenses; and

19         (6)    To continue providing active Employees with the Employee Benefits and to pay, or

20                otherwise honor, earned prepetition Employee Benefits.

21                                        **IV.**

22                                     **ARGUMENT**

23         Due to the timing of the commencement of these cases, certain Employees accrued

24   prepetition Wages for which payment would otherwise be made postpetition. A blow to employee

25   morale could clearly lead to disruptions to the Debtors' operations to the detriment of the Debtors'

26   going concern value. In particular, due to unavoidable timing issues associated with the

27   commencement of these cases, certain payroll obligations may have accrued, but gone unpaid,

28   prior to the filing of the cases. If the Debtors are not permitted to meet all payroll-related

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

obligations in the ordinary course of business, the Debtors could suffer unmanageable Employee

outrage or turnover to the detriment of all parties to the Debtors' bankruptcy estates.  Any

significant number of Employee departures or deterioration in morale at this time will substantially

and adversely impact the Debtors' businesses and result in immediate and irreparable harm to the

Debtors' estates.

The Debtors submit that the amounts to be paid pursuant to this Motion are comparatively

small in light of the importance and necessity of preserving the Employees' services and morale

and the difficulties and losses the Debtors will suffer if Employees leave in significant numbers.

The Debtors further submit that there is ample justification for their belief that even the slightest

delay in providing this relief to their Employees will hamper operations and damage the Debtors'

estates and as a consequence the Debtors are anxious to reassure their Employees.

Moreover, all of the Prepetition Wages and Employee Benefits which the Debtors request

authority to pay are entitled to priority in payment under sections 507(a)(4), (a)(5) and (a)(8)(D) of

the Bankruptcy Code.  In no instance do the aggregate Prepetition Wages and Employee Benefits

due and owing by the Debtors to a particular Employee exceed the sum of $10,950 allowable as a

priority claim under section 507(a)(4) of the Bankruptcy Code.

Thus, the Debtors request authority to pay all such amounts in the ordinary course of

business.

**A.**      **Prepetition Wages and Prepetition Employee Benefits Are Priority Claims Under
Bankruptcy Code Sections 507(a)(4)**

The payment of Prepetition Wages and Employee Benefits is justified because such wages

and benefits are entitled to a priority under section 507(a)(4) of the Bankruptcy Code.  Under

section 507(a)(4), each employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $10,950 for each
> individual or corporation, as the case may be, earned within 180 days
> before the date of the filing of the petition or the date of the cessation
> of the debtor's business, whichever occurs first, for
>
> (A) wages, salaries, or commissions, including vacation, severance,
> and sick leave pay earned by an individual; or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtors.

11 U.S.C. § 507(a)(4).

Inasmuch as the Prepetition Wages for which the Debtors seek authority to pay were earned within 180 days of the commencement of the Petition Date, Employees' claims for payment of such compensation are entitled to priority pursuant to section 507(a)(4).  The Debtors' request for authority to pay these claims now therefore merely constitutes a request to accelerate payment in order to avoid the devastation of employee morale and the operation of the Debtors' businesses.

Moreover, maintaining employee morale and adequate staffing preserves the going concern value of the businesses which inures to the benefit of the Debtors' creditors.

The Debtors' relationships with Employees, including the terms and conditions of their employment, are matters subject to the Debtor's business judgment and may be managed by the Debtors in the "ordinary course of business."  *See In re All Seasons Indus., Inc.*, 121 B.R. 822, 825-26 (Bankr. N.D. Ind. 1990); *In re Pac. Forest Indus., Inc.*, 95 B.R. 740, 743 (Bank. C.D. Cal. 1989) ("Employees do not need court permissions to be paid and are usually paid as a part of the ongoing operation of the business.").  This doctrine also applies to accrued employee benefits such as vacation and leave policies.  *See In re Canton Castings, Inc.*, 103 B.R. 874, 876 (Bankr. N.D. Ohio 1989); *see* 11 U.S.C. § 507(a)(5).  The maintenance of the Debtors' benefit programs is an important part of the Debtors' relationships with their employees that is within the Debtors' business judgment.

Finally, the Employee Deductions and certain of the Employee Benefits represent funds that the Debtors are not entitled to hold for any protracted period, since the Debtors effectively hold these amounts in trust and the Employees themselves hold a direct claim against such funds.

**B.**    **Funds Held in Trust Are Not Available for Distribution to Unsecured Creditors**

Section 541(d) of the Bankruptcy Code excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest."  11 U.S.C. § 541(d).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of the taxing authorities are not property of the estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 98-103 (3d Cir. 1994) (holding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds are commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

To avoid the serious disruption of the Debtors' reorganization efforts that could result from the nonpayment of any withholding taxes, the Debtors seek authority to remit all Payroll Taxes, including Payroll Taxes collected on behalf of the Employees prior to the Petition Date to the applicable taxing authorities to the extent that the Payroll Taxes have not already been remitted. The Payroll Taxes are held in trust for the benefit of the appropriate federal, state or local taxing authority for employees on behalf of whom such payment is being made. As such, the Payroll Taxes are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. Because the Payroll Taxes are held in trust on behalf of others and thus do not constitute property of the Debtors' estates, the remittance of the Payroll Taxes will not adversely affect the Debtors' estates or their creditors and is warranted.

Further, many federal, state and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted. Accordingly, if these amounts remain unpaid, there is a risk that the Debtors' officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of these chapter 11 cases. Such lawsuits obviously would constitute a significant distraction for officers and directors at a time when they should be focused on the Debtors' efforts to (a) stabilize their postpetition business operations and (b) develop and implement a successful reorganization strategy.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**C.**     **This Court Has Authority Pursuant To Section 105(a) and the "Doctrine of Necessity" To Grant The Relief Requested**

Pursuant to section 105(a) of the Bankruptcy Code, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).  The basic purpose of section 105(a) is "to enable the court to do whatever is necessary to aid in their jurisdiction, in anything arising in or relating to a bankruptcy case." 2 *Collier on Bankruptcy*, §105.2, at 105-4 (15th ed. 1988).  Essentially, section 105(a) codifies the bankruptcy court's inherent equitable powers. *See In re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir. 1985).

Where business exigencies require, courts have exercised their equitable power under section 105(a) to authorize debtors to pay prepetition claims of particular creditors essential to continued operations. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989).  The "Necessity of Payment Doctrine," which empowers a court to authorize a debtor to pay prepetition claims, is critical to virtually any non-liquidating chapter 11 case.  "The "necessity of payment" doctrine . . . [permits] immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid." *Ionosphere Clubs*, 98 B.R. at 176 (*quoting In re Leigh & New England Rwy Co.,* 657 F.2d 570, 581 (3rd Cir. 1981)).  This doctrine applies in all chapter 11 cases because "the rationale for the necessity of payment rule, i.e., facilitating the continued operation and rehabilitation of the debtor… is also a paramount goal of chapter 11." *Ionosphere Clubs*, 98 B.R. at 176 (*citing Dudley v. Mealev*, 147 F.2d 268 (2d Cir. 1945), *cert. denied*, 325 U.S. 873 (1945)).  Therefore, where continued operation and rehabilitation of a debtor require payment of prepetition wages, the Court may authorize such payment under section 105(a) of the Bankruptcy Code.

It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating a chapter 11 case is critical to a successful reorganization.  As the court noted in *In re Chateaugay Corporation*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (internal citations omitted):

> Employee good will and contentment is an asset which is vital to the continuation of a debtor's business operations and its ability to effective reorganize during the Chapter 11 process.  In granting Debtors applications for permission to provide hardship payments to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

> injured workers, this Court determined that the uninterrupted
> payment of LTV steel workers' compensation obligations is essential
> to employee morale and industrial tranquility which, in turn, are
> critical to a successful reorganization.

Similarly, in *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989), the court endorsed the debtor's payment of prepetition employee wage claims because "retention of skills, organization and reputation for performance must be considered valuable assets contributing to going concern value and aiding rehabilitation where that is possible."

The Debtors are mindful that in *In re B&W Enterprises*, 713 F.2d 534 (9th Cir. 1983), the Ninth Circuit refused to extend the Necessity of Payment doctrine beyond railroad reorganization cases where the debtor made unauthorized postpetition payments to trade suppliers on prepetition debts. In *B&W*, after conversion to chapter 7, the trustee sought to recover the payments under section 549 of the Bankruptcy Code. That case is factually distinguishable from the instant one in that *B&W* (a) involved ordinary trade suppliers for which the claims were not entitled to priority; (b) did not seek prior court approval for the payments, and (c) was in liquidation, thereby rendering the "necessity" of such payments moot.

For a number of reasons, the Bankruptcy Code affords special treatment to certain prepetition claims of employees. Compared to a typical claim in bankruptcy, wages represent a large part of an employee's wealth. In addition, unlike an ordinary trade creditor, the typical employee does not have other sources of income and thus cannot diversify the risk of the employer's default. It is critical that the Debtors be permitted to pay outstanding, non-discretionary Prepetition Wages that would otherwise constitute priority claims against the Debtors' estates. To fail to do so would be devastating to employee morale and could lead to the loss of key Employees at this critical time.

Also, it is important for the TOY to continue to Webster Obligations, which reimburse Ocean Park for the services of the Debtors' General Manager,[6] and to reimburse Ocean Park for insurance policy premiums paid by Ocean Park that benefit the Debtors' Employees.

---

[6] The necessity doctrine also applies to contract employees. *See In re Equalnet Communications Corp.*, 258 B.R. 368, 370-71 (Bankr. S.D. Tex. 2000) ("First, the contract employee will be found to be necessary to the estate and her claim tantamount to a priority wage claim (a number of which have already been allowed in this case). To that extent, it will be limited to the statutory cap of $4,300 and allowed in that amount…. ORDERED that Debtors are authorized to pay

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**D.**    **Reissuing Checks and Electronic Transfers Relating to Employee Obligations**

Furthermore, the Debtors request that they be authorized to reissue checks that had not yet

been presented for payment and electronic transfer requests that had not yet cleared as of the

Petition Date with respect to the Employee Obligations.

**F.**    **Compliance with Fed. R. Bank. P. 6003(b)**

Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay

all or part of a claim that arose before the filing of the petition" shall not be granted by the Court

within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid

immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b).  For the reasons described herein

and as supported by the Flagg Declaration, the Debtors submit that the requirements of Rule 6003

have been met and that the relief requested in this Motion is necessary to avoid immediate and

irreparable harm to the Debtors and their estates.

## V.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request entry of an order (i) authorizing, but not

directing, the Debtors to pay or otherwise honor their Employee Obligations and Webster

Obligations, in accordance with the Debtors' ordinary course of business and stated policies; (ii)

authorizing the Debtors to reissue checks or reinstitute electronic transfer requests relating to the

Employee Obligations in the case of checks that have not been presented or transfers that have not

cleared prior to the Petition Date; and (iii) granting such other and further relief as is just and

proper under the circumstances.

Dated:    May 6, 2010              PACHULSKI STANG ZIEHL & JONES LLP


                                   By:    */s/ Jeffrey N. Pomerantz*
                                          Jeffrey N. Pomerantz
                                          Linda F. Cantor
                                          Robert M. Saunders
                                          [Proposed] Attorneys for the Debtors
                                          and Debtors in Possession

the prepetition claim of Brigid K. Sheppard up to the amount of $4,300, with the balance to be allowed as a general
unsecured claim.").

# **EXHIBIT A**

1  Jeffrey N. Pomerantz (CA Bar No. 143717)
   Linda F. Cantor (CA Bar No. 153762)
2  Robert M. Saunders (CA Bar No. 226172)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California  90067-4100
4  Telephone: 310/277-6910
   Facsimile:  310/201-0760
5
   [Proposed] Attorneys for the Debtors and Debtors in Possession
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

                     SAN FERNANDO VALLEY DIVISION
10
    In re:                                  Case No. 1:10-bk-15358 GM
11                                          Chapter 11
    OCEAN PARK HOTELS-TOY, LLC,
12  a California limited liability company

13
                    Debtor,
14  ─────────────────────────────────────   Case No. 1:10-bk-15359 GM
    In re                                   Chapter 11
15
    OCEAN PARK HOTELS-TOP, LLC,
16  a California limited liability company   **[PROPOSED] ORDER (I) AUTHORIZING, BUT
                                            NOT REQUIRING, DEBTORS TO PAY
17                                          PREPETITION (A) WAGES, SALARIES, AND
                    Debtor.                 OTHER COMPENSATION, (B) EMPLOYEE
18                                          MEDICAL, WORKERS' COMPENSATION
                                            AND SIMILAR BENEFITS, AND
19                                          (C) REIMBURSABLE EMPLOYEE
                                            EXPENSES; AND (II) AUTHORIZING
20                                          DEBTORS TO REISSUE CHECKS OR
                                            ELECTRONIC TRANSFER REQUESTS
21                                          RELATING TO THE FOREGOING**

22                                          Date:      May 10, 2010
                                            Time:      2:00 p.m.
23                                          Place:     Courtroom 303
                                                       United States Bankruptcy Court
24                                                     21041 Burbank Boulevard
                                                       Woodland Hills, California 91367
25                                          Judge:     Honorable Geraldine Mund

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1       The Court having considered the *Motion for Order (I) Authorizing, but not Requiring,*

2  *Debtors to Pay Prepetition (A) Wages, Salaries, and Other Compensation, (B) Employee Medical,*

3  *Workers' Compensation and Similar Benefits, and (C) Reimbursable Employee Expenses; and*

4  *(II) Authorizing Debtors to Reissue Checks or Electronic Transfer Requests Relating to the*

5  *Foregoing* (the "Motion")[7] filed by Ocean Park Hotels-TOY, LLC ("TOY") and Ocean Park

6  Hotels-TOP, LLC ("TOP"), the debtors and debtors in possession in the above-captioned cases

7  (the "Debtors") on an emergency basis pursuant to Local Bankruptcy Rule 2081-1(2)(F) and upon

8  the *Declaration of James M. Flagg  in Support of Emergency Motions;* and as reflected in the filed

9  proofs of service, due notice of the Motion having been served upon (a) the Office of the United

10  States Trustee, (b) the Debtors' twenty largest unsecured creditors, (c) the Debtors' secured

11  creditors; (d) Wells Fargo Bank; and (e) parties requesting special notice, and it appearing that no

12  other or further notice need be given; and sufficient cause appearing therefore, it is hereby

13       **ORDERED** that the Motion be and hereby is granted,; and it is further

14       **ORDERED** the Debtors are authorized to honor and pay the Employee Obligations in the

15  ordinary course of business in accordance with the Debtors' stated policies and prepetition practices,

16  including, but not limited to, paying any unpaid and accrued Prepetition Wages and prepetition

17  Ordinary Course Performance Bonuses provided that the Debtors shall not pay any Employee more

18  than $10,950 in Prepetition Wages and prepetition Ordinary Course Performance Bonuses on an

19  individual basis; and it is further

20       **ORDERED** the TOY is authorized to honor and pay to Ocean Park outstanding prepetition

21  Webster Obligations in the ordinary course of business provided that TOY shall not pay any

22  prepetition Webster Obligations in excess of $10,950; and it is further

23       **ORDERED** that the Debtors are authorized, but not directed, to continue in the ordinary

24  course of business to allocate and distribute the Deductions and the Payroll Taxes in accordance with

25  the Debtors' stated policies and prepetition practices; and it is further

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[7] Capitalized terms not defined herein shall have the definitions ascribed to them in the Motion.

1    **ORDERED** that the Debtors are authorized, but not directed, to pay the Employee Expenses

2    in the ordinary course of business in accordance with the Debtors' stated policies and prepetition

3    practices;

4    **ORDERED** that the Debtors are authorized, but not directed, to honor the Employee

5    Benefits programs, make any necessary contributions to such programs and pay, in the ordinary

6    course of business any unpaid premium, claim or amount owed as of the Petition Date, including,

7    but not limited to, honoring: (a) the Medical Plan; (b) the Workers' Compensation Insurance; and (c)

8    the Leave; and it is further

9    **ORDERED** that the Debtors are authorized to pay ADP any ADP Administration Fees that

10   ADP may be owed in connection with its services performed for the Debtors and to continue to pay

11   ADP postpetition in the ordinary course of the Debtors' business with respect to the same; and it is

12   further

13   **ORDERED** that the Debtors are authorized to reissue checks or reinstitute electronic transfer

14   requests that did not clear prior to the Petition Date on account of the Employee Obligations,

15   including but not limited to the Prepetition Wages, Employee Expenses, Payroll Taxes, and

16   Employee Benefits authorized to be paid pursuant to this Order in the ordinary course of business;

17   and it is further

18   **ORDERED** that any applicable banks or financial institutions are directed to process checks

19   and transfers that may be requested by the Debtors in the ordinary course of business with respect to

20   the payment of Employee Obligations authorized by this Order; and it is further

21   **ORDERED** that this Order shall not constitute an order approving the assumption of any

22   prepetition executory wage or compensation agreement or any prepetition agreement under which

23   the Webster Obligations arise pursuant to section 365 of the Bankruptcy Code; and it is further

24   **ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising

25   from or related to the implementation of this Order.

26

27                                           **#######**

28