Jeffrey N. Pomerantz (CA Bar No. 143717)
Linda F. Cantor (CA Bar No. 153762)
Robert M. Saunders (CA Bar No. 226172)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760

[Proposed] Attorneys for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>OCEAN PARK HOTELS-TOY, LLC,<br>a California limited liability company,<br><br>Debtor. | Case No.: 1:10-BK-15358 GM<br><br>Chapter 11 |
| In re:<br><br>OCEAN PARK HOTELS-TOP, LLC,<br>a California limited liability company,<br><br>Debtor. | Case No. :1:10-BK-15359 GM<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO HONOR CERTAIN PREPETITION OBLIGATIONS TO CUSTOMERS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of James M. Flagg in Support of Emergency Motion filed concurrently herewith]<br><br>Date: May 10, 2010<br>Time: 2:00 p.m.<br>Place: Courtroom 303<br>　　　　United States Bankruptcy Court<br>　　　　21041 Burbank Boulevard<br>　　　　Woodland Hills, California 91367<br>Judge: Honorable Geraldine Mund |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

62505-001\DOCS_LA:219279.5

**TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS OF THE DEBTORS, ALL ALLEGED SECURED CREDITORS; PARTIES REQUESTING SPECIAL NOTICE, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

Ocean Park Hotels-TOY, LLC ("TOY"), and Ocean Park Hotels-TOP, LLC. ("TOP"), the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), each hereby move the Court (the "Motion") for an order, pursuant to sections 105(a), 363(b), 507(a), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to honor or return certain prepetition deposits to customers and granting related relief.

The Motion is based on the Notice of Emergency Motions that will be filed and served upon obtaining a hearing date for the Debtor's "First Day Motions", the attached Memorandum of Points and Authorities, and the *Declaration of James M. Flagg in Support of the Emergency Motions* (the "Flagg Declaration") filed concurrently herewith, the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion. In addition, the Debtors request that the Court take judicial notice of all documents filed with the Court in these cases.

TOY owns the 120-room focused-service Courtyard by Marriott hotel located at 1710 Newbury Road, Thousand Oaks, California 91320 (the "Courtyard Hotel"). TOP owns the 93-room extended-stay Marriott TownePlace Suites hotel located at 1712 Newbury Road, Thousand Oaks, California 91320 (the "Suites Hotel," and, collectively, with the Courtyard Hotel, the "Hotels"). Prior to the filing of these chapter 11 cases (the "Cases"), the Debtors in the ordinary course of their business accepted customer deposits to guarantee a reservation for a guest room for an upcoming stay at one of the Hotels (the "Deposit Obligations"). Absent authorization from the Court, the Debtors would be unable in the ordinary course of their businesses to honor or perform certain obligations that arose in connection with the Deposit Obligations prior to the commencement of these Cases. Honoring these Deposit Obligations is essential to business operations to (i) ensure that the Debtors remain competitive among their major competitors; and (ii) assist the Debtors in maintaining customer confidence and satisfaction. A failure to continue to honor the Deposit

Obligations could result in deterioration in relationships with the Debtors' customers and significantly harm the Debtors' standing in their competitive businesses, thereby causing a material reduction in occupancy.

The Debtors request that the relief sought herein be granted on an emergency basis because the uninterrupted honoring of the Deposit Obligations described in the Memorandum attached is essential to the Debtors' survival in that failure to honor such deposits would certainly result in a substantial loss of guests reserving rooms in the Hotels, thus, jeopardizing future revenues for the Debtors. The Debtors, therefore, pursuant to Rule 2081-1(a)(7) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, effective January 4, 2010. (the "Local Bankruptcy Rules"),[1] request that this Motion be heard on an emergency basis. Granting the relief requested in this Motion on an emergency basis will benefit the estate immediately as set forth above.

The Debtors will serve Notice of Motion and the Motion, the attached Memorandum of Points and Authorities, and the Flagg Declaration, on: (1) the Office of the United States Trustee, (2) the creditors appearing on the list filed in accordance with Fed. R. Bankr. P. 1007(d) by the Debtor, (3) all alleged secured creditors, and (4) parties that file with the Court and serve upon the Debtors requests for notice of all matters in accordance with Bankruptcy Rule 2002(i). To the extent necessary, the Debtors request that the Court waive compliance with Local Bankruptcy Rule 9075-1(a)(5) and approve service (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight delivery. In the event that the Court grants the relief requested by the Motion, the Debtors shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs. The Debtors submit that such notice is appropriate under the circumstances.

---

[1] Pursuant to Local Bankruptcy Rule 9075-1(a)(3), no separate motion for an expedited hearing is required.

62505-001\DOCS_LA:219279.5                     3

**WHEREFORE**, the Debtors respectfully request that the Court enter an order providing that the Debtors have the authority, in its discretion, to continue to honor or return the customer deposits in the ordinary course of their businesses and for such other relief as is just.

Dated:   May 6, 2010                           PACHULSKI STANG ZIEHL & JONES LLP

                                               By    */s/ Jeffrey N. Pomerantz*
                                                     Jeffrey N. Pomerantz (CA Bar No. 143717)
                                                     Linda F. Cantor (CA Bar No. 153762)
                                                     Robert M. Saunders (CA Bar No. 226172)
                                                     [Proposed] Attorneys for Debtors and Debtors
                                                     in Possession

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.**

## **INTRODUCTION**

The Debtors are Ocean Park Hotels-TOY, LLC ("TOY") and Ocean Park Hotels-TOP, LLC ("TOP"). TOY owns the 120-room focused-service Courtyard by Marriott hotel located at 1710 Newbury Road, Thousand Oaks, California 91320 (the "Courtyard Hotel"). TOP owns the 93-room extended-stay Marriott TownePlace Suites hotel located at 1712 Newbury Road, Thousand Oaks, California 91320 (the "Suites Hotel," and, collectively, with the Courtyard Hotel, the "Hotels"). Prior to the filing of these chapter 11 cases (the "Cases"), the Debtors in the ordinary course of their businesses accepted customer deposits to guarantee a reservation for a guest room for an upcoming stay at one of the Hotels (the "Deposit Obligations"). Absent authorization from the Court, the Debtors would be unable in the ordinary course of their businesses to honor or perform certain obligations that arose in connection with the Deposit Obligations prior to the commencement of these Cases. Honoring these Deposit Obligations is essential to business operations to (i) ensure that the Debtors remain competitive among their major competitors; and (ii) assist the Debtors in maintaining customer confidence and satisfaction. A failure to continue to honor the Deposit Obligations would result in deterioration in relationships with the Debtors' customers and significantly harm the Debtors' standing in their competitive businesses, thereby causing a material reduction in occupancy.

Accordingly, by this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 363(b), 507(a), 1107(a) and 1108 of the Bankruptcy Code, authorizing the Debtors to honor and perform, in their sole discretion, prepetition obligations related to the Deposit Obligations in the ordinary course of their business.

## **II.**

## **STATEMENT OF FACTS**

### **A. Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Cases of the Debtors is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein are sections 105(a), 363(c), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

**B.   Background**

On May 6, 2010 (the "Petition Date"), the Debtors commenced these Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee has been appointed in the Cases.  On the Petition Date, the Debtors filed a motion for joint administration of the Cases under Bankruptcy Rule 1015(b).

As stated above, TOY owns the Courtyard Hotel and TOP owns the Suites Hotel.  The Courtyard Hotel opened in December 2006 and the Suites Hotel opened in April 2007. Since opening, the Hotels have been operated continuously and have received laudable ratings from Marriott International, Inc. ("Marriott"). In September 2009, Marriott conducted a performance and operational review of the Courtyard Hotel; it received a total score of 98 out of a possible 100.  The most recent performance and operational review of the Suites Hotel was conducted on February 4, 2010, resulting in a score of 97 out of 100 – the highest score of any Towne Suite Marriott facility in the United States.

The Hotels have continued to maintain viable occupancy rates during the current economic climate.  The Courtyard Hotel had an average occupancy rate of 73.84% for March 2010 and an average occupancy rate of 67.17% for the first quarter of 2010.  The Suites Hotel had an average occupancy rate of 70.00% for March 2010 and an average occupancy rate of 72.86% for the first quarter of 2010.   The Debtors project that the average annual revenues for years 2009 and 2010 will be approximately $4.2 million for the Courtyard Hotel and approximately $2.65 million for the Suites Hotel.  The current and projected operating revenues are sufficient to allow the Debtors to pay on-going operational expenses.

The Hotels are managed by Ocean Park Hotels, Inc. ("Ocean Park"), which is a developer,

owner, and operator of focused-service and extended-stay hotels with corporate office in San Luis Obispo, California. Ocean Park's managed hotel properties operate under the flags of Marriott, Hilton, Holiday Inn Express, and Best Western franchises, with hotels currently operating in California in Thousand Oaks, Camarillo, Valencia, San Luis Obispo, Goleta (Santa Barbara) and Poway (San Diego). James Flagg serves as the Ocean Park's president and, during his twenty-year real estate career, he has been involved in over $1 billion of real estate transactions.

TOY and TOP are each California limited liability companies. CEF Equities, LLC owns a 75% membership interest in each Debtor (CEF Equities, LLC is 100% owned by the Claire E. Flagg Trust). James Flagg owns a 25% membership interest. James Flagg is the Manager of each Debtor under their respective limited liability company operating agreements.

Construction of the Hotels began in or about November 2004 funded by a construction loan (the "Loan") from Nationwide Life Insurance Company ("Nationwide" or "Lender"). Under a construction loan agreement dated as of November 18, 2004 (as amended, the "Loan Agreement"), Nationwide agreed to loan TOY and TOP initially $23,750,000 (increased to $25,319,000 in 2006) for construction of the Hotels, to be secured by construction deeds of trust, UCC filings, and assignments of lease and rents. The Loan is guaranteed by Ocean Park, James Flagg and the Claire E. Flagg Trust. The Loan is serviced for Nationwide by RBC Investment Services LLC ("RBC), whose sole member is RockBridge Capital, LLC.

The Loan matured by its terms on December 1, 2009 (the "Maturity Date"). On December 2, 2009, RBC sent TOY and TOP a notice of default. On March 1, 2010, and again on March 9, 2010, Nationwide sent TOY and TOP demand letters for repayment of the Loan.

On April 6, 2010, Nationwide filed its Complaint for Foreclosure of Trust Deed and Specific Performance in the Superior Court of the State of California in Ventura County. The foreclosure action was assigned case number 56-2010-00370987-CU-OR-VTA (the "Foreclosure Action").

On April 8, 2010, Nationwide filed its Ex Parte Application for Order Appointing Receiver, Temporary Restraining Order and Order to Show Cause Re Appointment of Receiver and Preliminary Injunction; and Points and Authorities in Support Thereof (along with supporting declarations) (the "Ex Parte Application"). On April 9, 2010, TOY and TOP filed their Opposition

to the Ex Parte Application on the grounds, inter alia, that the appointment of a receiver (i) is unnecessary and unwarranted under the circumstances, (ii) would impede the Hotels' operations and hurt employee morale, and (iii) impair the value of the Hotels to the detriment of all parties in interest. The Ex Parte Application was heard and all relief sought (temporary restraining order, appointment of receiver and preliminary injunction) was denied by the superior court on an ex parte basis on April 9, 2010.

A hearing on whether the relief sought in the Application should be granted after notice and full briefing is scheduled for May 6, 2010. TOP and TOY filed their opposition to the Ex Parte Application on April 23, 2010, and Nationwide filed a reply to the opposition on April 30, 2010. No injunctive relief is currently in place.

The Debtors believe that the value of the Hotels substantially exceeds the amount owed to Nationwide on the Loan. Specifically, the Debtors believe that the value of the Hotels is in excess of $30 million. In order to maintain the value of the Hotels for the benefit of all constituents, the Debtors filed their petitions for relief under the Bankruptcy Code. The Debtors are exploring alternatives to maximize the value of the estates, including possibly refinancing the Loan, a sale of one or both of the Hotels or a restructuring of the Loan and their other obligations under a chapter 11 plan of reorganization.

**C.    The Deposits for Guest Rooms and Conference Rooms and the Prepetition Obligations Arising Therefrom**

Guests who reserve a room at one of the Hotels guarantees the reservation with a deposit by way of a credit card or a cash deposit. The Debtors are holding approximately 36 customer deposits totaling approximately $4,384.09. None of the deposits held by the Debtors for any one guest exceeds $2,425. In fact most of the deposits are under $300 for each individual.

The Debtors seek authority, in their discretion, to continue to honor the Deposit Obligations in the ordinary course of their businesses. Such Deposit Obligations have been honored by the Debtors' in the ordinary course of business and are essential for the Debtors to stay competitive in their industry. Also, the Debtors can avoid claims against their estates, which would be priority claims, and preserve their profits from the revenue from these guest rooms represented by these

62505-001\DOCS_LA:219279.5    8

deposits.

The Debtors are seeking the relief requested herein in order to maintain customer confidence during the pendency of the Cases. As set forth below, absent such relief, the Debtors' customer relations will be severely and irreparably harmed at a time when customer loyalty and patronage is extremely critical to the Debtors and the Debtors' ability to reorganize for the benefit of all of the parties in interest will be put in jeopardy.

## III.

## ARGUMENT

### A. Honoring Deposit Obligations Falls Within the Ordinary Course of Business

The Bankruptcy Code contemplates that the chapter 11 debtors will continue business as usual for their customers. Unless the Bankruptcy Court orders otherwise, section 1108 of the Bankruptcy Code authorizes a debtor in possession to "operate the debtor's business,"[2] and section 363 states that "[i]f the business of the debtor is authorized to be operated under section . . . 1108 . . . and unless the court orders otherwise, the [debtor in possession] may enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice and a hearing." 11 U.S.C. § 363(c)(1).

As the Ninth Circuit recognized:

> The touchstone of "ordinariness" is . . . the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing . . . .

*Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 705 (9th Cir. 1988) (citation omitted). There is nothing more ordinary in the course of Debtors' businesses than honoring Deposit Obligations.

---

[2] 11 U.S.C. §§ 1107 ("Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."), and 1108 ("Unless the court, on request of a party in interest and after hearing and notice, orders otherwise, the trustee may operate the debtor's business.").

62505-001\DOCS_LA:219279.5                9

**B.    The Honoring of Certain Prepetition Customer Obligations Can Be Authorized Under Section 105(a) of the Bankruptcy Code**

Although the Deposit Obligations may be satisfied in the ordinary course of business, to the extent that court approval is required, this Court has broad equitable authority under section 105(a) of the Bankruptcy Code to approve the relief requested in this Motion. Pursuant to section 105(a), "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[3] In *United States v. Energy Resources*, 495 U.S. at 549, the Supreme Court held that Section 105(a) confers broad powers that are consistent with the "traditional understanding" that bankruptcy courts are courts of equity. "While Section 105(a) endows bankruptcy courts with broad equitable powers, Section 105(a) may be exercised only in a manner not inconsistent with the provisions of the Code." *Gurney v. Sate of Arizona Dept. of Revenue (In re Gurney)*, 192 B.R. 529, 537 (9th Cir. BAP 1996).[4]

Some courts view section 363, as well as other provisions of the Bankruptcy Code, as a bridge to section 105(a), which may then authorize the payment of certain prepetition claims;[5] whereas other courts have interpreted section 105(a) to provide independent statutory authority for the payment of such claims.[6] Both strands of analysis generally reason that section 105 can be used

---

[3] 11 U.S.C. § 105(a). Congress' choice of words in section 105 – "any", "necessary", "appropriate", "carry out", "provisions of this title" – all suggest that Congress intended an expansive interpretation of the section that would not limit the courts in addressing issues that may arise in bankruptcy cases. *See United States v. Energy Resources Co.,* 495 U.S. 545, 549 (1990) ("The Code also states that bankruptcy courts may 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Code. [sic] § 105(a).") (citations omitted).

[4] *See also In re Mercado*, 124 B.R. 799, 802 (Bankr. C.D. Cal. 1991) ("*Energy Resources*, therefore, stands for the following principles:  (1) the bankruptcy court has broad equitable power to resolve debtor/creditor matters; (2) its equitable power is limited by specific provisions in the Bankruptcy Code and other federal laws that should be considered before exercising this power; and (3) absent specific conflicts in the Bankruptcy Code and federal law, a debtor has broad discretion to deal with its creditors through the plan process, provided its actions are necessary for a successful reorganization, and the bankruptcy court has the equitable power to approve such plans.").

[5] *See e.g., In re CoServ, L.L.C*., 273 B.R. 487, 496-97 & n.17 (Bankr. N.D. Tex. 2002) ("To get from section 105(a) to the Doctrine of Necessity, the Court must find a bridge that makes application to the Doctrine of Necessity 'necessary or appropriate to carry out the provisions of' [section 105(a)]. The Court believes such a bridge exists in the debtor in possession's role as the equivalent of a trustee.") (citations omitted); *In re Tropical Sportswear Int'l Corp*., 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("This Court finds that a bankruptcy court may utilize sections 105(a) and 363 of the Bankruptcy Code to justify the grant of critical vendor status under appropriate circumstances. Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

[6] *See e.g.*, *In re Just for Feet, Inc*., 242 B.R. 821, 824 (D. Del. 1999) (section 105 provides "a statutory basis for the payment of pre-petition claims"); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[U]nder 11 U.S.C. § 105 the court can permit pre-plan payment of a prepetition obligation when it's essential to the continued operation of the debtor."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (same).

to further the policy provisions of chapter 11, including (i) "to permit the successful rehabilitation of debtors," *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984), and (ii) to "preserv[e] going concerns and maximiz[e] property available to satisfy creditors," *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. La Salle St. P'ship*, 526 U.S. 434, 453 (1999).[7] Thus, section 105(a) empowers the bankruptcy court to authorize payment of prepetition claims when such payments are essential to ensure the survival of the debtor pending its reorganization and to maximize the estate's assets available to satisfy creditors.

In some instances, courts have labeled their equitable power to satisfy prepetition claims under section 105(a) the "Necessity of Payment Doctrine." *See, e.g.*, *Ionosphere Clubs, Inc.*, 98 B.R. at 175-76 (*citing Miltenberger v. Logansport, C. & S. W. R. Co.*, 106 U.S. 286 (1882)). Although the Ninth Circuit refused to extend the Necessity of Payment Doctrine beyond railroad reorganization cases in *B&W Enters, Inc. v. Goodman Oil Co. (In re B&W Enters., Inc.)*, 713 F.2d 534 (9th Cir. 1983),[8] subsequent Ninth Circuit decisions have acknowledged that payment of prepetition claims is appropriate in certain circumstances. For instance, in *Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*, the Ninth Circuit acknowledged the importance of paying certain prepetition claims in a reorganization case, even when the claimants are provided an advantage over other creditors:

> [A] "fundamental tenet" – rehabilitation of debtors . . . may supersede the policy of equal treatment. Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.

829 F.2d 1484, 1490 (9th Cir. 1987) (citation omitted).[9] Similarly, other courts have acknowledged

---

[7] S*ee also In re Enron Corp.*, 274 B.R. 327, 348 (Bankr. S.D.N.Y. 2002) (the "ultimate purpose" of a chapter 11 bankruptcy case is to successfully reorganize).

[8] *In re B&W Enters., Inc.*, where the debtor made unauthorized postpetition payments to trade suppliers on prepetition debts, is easily distinguishable because: (i) it involved ordinary trade debts and not obligations to customers, who, unlike vendors, do not generally expect to extend trade credit or take credit risk that vendors anticipate; (ii) the debtor did not seek prior court approval for the payments; and (iii) the case was in liquidation, thereby rendering the "necessity" of such payments moot. 713 F.2d at 535-36.

[9] *See also Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLC)*, 424 F.3d 963, 969 (9th Cir. 2005) (citing *In re Adams Apple, Inc.* for its rejection of the fundamental tenet of bankruptcy law that like creditors must always be treated alike).

the appropriateness of allowing payment of certain prepetition claims.  As one bankruptcy court observed:

> This Court has previously noted that the payment of prepetition claims prior to confirmation of a plan in a Chapter 11 case has been proscribed by the 5th Circuit. . . . In certain cases, courts in this district have found exceptions to this general rule of nonpayment.  These exceptions arise primarily out of common sense and the presence of a legal or factual inevitability of payment. . . .  For instance, . . . certain cases involve business transactions which are at once individually minute but collectively immense and critical to the survival of the business of the debtor.  Examples include the redemption of prepetition retail coupons in a consumer products case, the honoring of credit card debits, credits and chargebacks in a retail department store case or, as in the case at bar, the issuance of billing credits to retail customers in connection with prepetition telephone services and invoices.  The impact of the failure to allow payment of these sorts of 'nuisance' items would be devastating to a proposed reorganization in the context of a retail market.  A quick corollary is that such a failure to pay and its consequent loss of customer base would impair value of the business on either a going concern or liquidation basis.  Further, the prepetition claims in some cases might be subject to offset or recoupment or both.

*In re Equalnet Commc'ns*, 258 B.R. 368, 369-70 (Bankr. S.D. Tex. 2000) (citation omitted).

Bankruptcy Judge Dennis Montali of the Northern District of California agrees that a bankruptcy court should authorize a debtor in a reorganization matter to pay certain prepetition claims.  According to a recent American Law Institute – American Bar Association Continuing Legal Education publication authored by him, customer deposits similar to the Deposit Obligations at issue "may give rise to prepetition claims for money, goods or services that *must* be honored to avoid irreparable damage to the debtor's reputation and business."  D. Montali and R.P. Vance, "First Day Orders," in *Chapter 11 Business Reorganizations* ALI-ABA Course of Study, at 98-99 (June 9-11, 2005) (available on Westlaw at SK092 ALI-ABA 85) (emphasis added).

Here, the Debtors are seeking generally to honor their Deposit Obligations rather than pay guests; however the Debtors do plan to return deposits to guests who, for instance, cancel their reservations. The foregoing authority should be applied to honoring Deposit Obligations including returning deposits in the ordinary course of business.

Further, section 507(a)(7) of the Bankruptcy Code provides that a claim of any customer, not to exceed $2,425, that arises from a deposit with the Debtors in connection with the purchase, lease or rental of property for the personal, family or household use of the individual is to be accorded priority.  All of the 36 customer deposits being held by the Debtors as guarantees for the guest rooms

in the Hotel are in amounts less than $2,425.  Therefore, all of Deposit Obligations would be priority claims entitled to be paid in full under any plan of reorganization.

**C.    The Bankruptcy Code Does Not Prohibit Postpetition Satisfaction of Prepetition Obligations**

Section 549(a) the Bankruptcy Code provides further support for the proposition that postpetition satisfaction of prepetition customer obligations is permissible.  Section 549(a) empowers the debtor in possession to avoid unauthorized postpetition transfers and provides that "the trustee may avoid a transfer of property of the estate . . . made after the commencement of the case . . . that is not authorized . . . by the court."  11 U.S.C. § 549(a).  By necessary implication of this provision, a bankruptcy court may authorize limited postpetition payments to satisfy prepetition obligations.  *In re Isis Foods, Inc.*, 37 B.R. 334, 336 n.3 (W.D. Mo. 1984) ("proposed transfers [to pay prepetition claims] may be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack").

**D.    Summary**

The Debtors submit that their business operations and their ability to retain customer loyalty and repeat business depends on their ability to honor the Deposit Obligations.  The Court's authorization for the Debtors to continue honoring their Deposit Obligations in the ordinary course of business or pursuant to section 105(a) of the Bankruptcy Code, in conjunction with either section 363 and other sections of the Bankruptcy Code *or* under the concept of the Necessity of Payment Doctrine, serves as a viable and equitable means for ensuring that the Debtors can continue their operations in the ordinary course, maximize the value of their estates for the benefit of all parties in interest.

The Debtors' ongoing operations depend on the continued loyalty and patronage of their guests and the relief requested herein is essential to business operations and customer confidence. The Debtors' ability to honor Deposit Obligations will avoid claims, which are all priority claims against the estates, while preserving the profits from the revenues of the Hotels.

**E.    Compliance with Fed. R. Bank. P. 6003(b)**

Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all

or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). To the extent any of the above described Deposit Obligations is determined to be a claim against the estates that arose before the Petition Date, for the reasons described herein and as supported by the Flagg Declaration, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## IV.

## CONCLUSION

Based upon the foregoing, the Debtors respectfully request that the Court enter an order authorizing the Debtors to honor their customer deposits and granting such other and further relief as is just and proper under the circumstances.

Dated:   May 6, 2010                                PACHULSKI STANG ZIEHL & JONES LLP

                                                    By   */s/ Jeffrey N. Pomerantz*
                                                         Jeffrey N. Pomerantz (CA Bar No. 143717)
                                                         Linda F. Cantor (CA Bar No. 153762)
                                                         Robert M. Saunders (CA Bar No. 226172)
                                                         [Proposed] Attorneys for Debtors and Debtors
                                                         in Possession

# **EXHIBIT A**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Linda F. Cantor (CA Bar No. 153762)
Robert M. Saunders (CA Bar No. 226172)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760

Attorneys for Debtors and Debtors in Possession Ocean Park Hotels-TOP, LLC and Ocean Park Hotels-TOP, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>OCEAN PARK HOTELS-TOY, LLC,<br>a California limited liability company,<br><br>Debtor. | Case No.: 1:10-bk-15358 GM<br><br>Chapter 11 |
| In re:<br><br>OCEAN PARK HOTELS-TOP, LLC,<br>a California limited liability company,<br><br>Debtor. | Case No. 1:10-bk-15350 GM<br><br>Chapter 11<br><br>**[PROPOSED] ORDER AUTHORIZING THE DEBTORS TO HONOR CERTAIN PREPETITION OBLIGATIONS TO CUSTOMERS**<br><br>Date:  May 10, 2010<br>Time:  2:00 p.m.<br>Place:  Courtroom 303<br>          United States Bankruptcy Court<br>          21041 Burbank Boulevard<br>          Woodland Hills, California 91367<br>Judge:  Honorable Geraldine Mund |

The Court having considered the *Emergency Motion for an Order Authorizing the Debtors to Honor Certain Prepetition Obligations to Customers* (the "Motion")[1] filed by Ocean Park Hotels-TOY, LLC ("TOY") and Ocean Park Hotels-TOP, LLC ("TOP"), the debtors and debtors in

---

[1] Capitalized terms not defined herein shall have the definitions ascribed to them in the Motion.

62505-001\DOCS_LA:219513.2

possession (the "Debtors") in the above-captioned cases (the "Cases"); and due notice of the Motion having been served upon (a) the Office of the United States Trustee, (b) creditors holding the twenty (20) largest unsecured claims against each of the Debtors, (c) all alleged secured creditors; and (d) parties requesting special notice, and it appearing that no other or further notice need be given; and sufficient cause appearing therefore, it is

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED.

2. The Debtors are hereby authorized, in their discretion, to continue to honor or return prepetition and postpetition customer deposits in the ordinary course of their businesses.

#####